UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBIO RONNIE TOWNSEND,<br><br>              Plaintiff,<br><br>     v.<br><br>HEMELA, *et al.*,<br><br>             Defendants. | Case No. 1:19-cv-01054-NONE-BAM (PC)<br><br><u>ORDER ADOPTING FINDINGS AND RECOMMENDATIONS IN PART, DISMISSING CERTAIN CLAIMS, AND ALLOWING ONE CLAIM TO PROCEED</u><br><br>(ECF No. 10) |

Plaintiff Rebio Ronnie Townsend ("Plaintiff") is a civil detainee proceeding *pro se* and *in forma pauperis* in this civil rights action brought under 42 U.S.C. § 1983. (Doc. No. 1.) Plaintiff is being detained pursuant to California's Mentally Disordered Offender (MDO) law, California Penal Code §§ 2970, *et seq.*[1] Individuals detained under the MDO law are considered civil detainees, rather than prisoners within the meaning of the Prisoner Litigation Reform Act. *Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000). This matter was referred to a United States

---

[1] Under the MDO law, a state prisoner who is about to be released may be found to represent a substantial danger of physical harm to others, on account of a mental disease or defect, and on this basis committed to a state hospital for a term of one year. The determination of MDO status is made at a court proceeding where the person facing commitment is represented by counsel and, unless waived, is entitled to a jury trial. *See* Cal. Penal Code § 2972. Prior to the expiration of the one-year commitment, if it is deemed that remission either has not occurred or cannot be maintained without treatment, a further proceeding may be held to determine whether recommitment for another one year period is warranted. *Id.*

1

Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On January 24, 2020, the assigned magistrate judge issued findings and recommendations recommending that this action be dismissed for failure to state a cognizable § 1983 claim. (Doc. No. 10.) Those findings and recommendations were served on plaintiff and contained notice that any objections thereto were to be filed within fourteen (14) days after service. (*Id.* at 5.) Plaintiff filed objections on February 10, 2020. (ECF No. 12.)

In accordance with the provisions of 28 U.S.C. § 636 (b)(1)(C), this court has conducted a *de novo* review of the case. Having carefully reviewed the entire file, the court adopts the magistrate judge's findings and recommendations in part, but declines to do so in one respect, as explained below.

In his complaint, plaintiff alleges that he is being forced to take psychiatric medication based upon a state court order and that these medications are causing side effects that plaintiff finds intolerable, including incontinence, vomiting, dizziness, constant abdominal pain and constipation, and excessive drowsiness. (Doc. No. 1 at 3.) Plaintiff further alleges that he has brought his concerns to the attention of the three medical professional defendants, but that no one will listen to him. (*Id*. at 4-5.)

The pending findings and recommendations correctly conclude that to the extent plaintiff is challenging his designation under the MDO law[2] and/or the fact that he is being forcibly medicated, he fails to state a cognizable claim under § 1983 because the circumstances of plaintiff's commitment indicate he has no expectation to be free from unwanted psychotropic medication. (Doc. No. 10 at 4.)

However, a liberal reading of plaintiff's complaint suggests that he is not only challenging the fact of his forced medication, but also the exact drugs and dosages of those drugs being administered to him, as well as the inattentiveness of defendants to the serious side effects he is suffering as a result of the forced medications. The Supreme Court has recognized that inmates

---

[2] The findings and recommendations incorrectly indicate that plaintiff is a civil detainee held pursuant to California's Sexually Violent Predators Act (SVPA). Cal. Welf. & Inst. Code § 6600 *et seq*. However, this distinction does not change the applicable legal standard or alter the analysis set forth in this order.

possess a liberty interest in freedom from unwanted antipsychotic drugs requiring that "certain essential procedural protections" and "factual circumstances" be in place in any system seeking to forcibly administer such medications. *Washington v. Harper*, 494 U.S. 210, 221–22, 36 (1990). Detainees who are not confined due to a criminal conviction possess "at least" as much protection as convicted criminals. *Riggins v. Nevada*, 504 U.S. 127, 135 (1992). Courts have extended *Riggins* to civil detainees. *See Jurasek v. Utah State Hosp.*, 158 F.3d 506, 511 (10th Cir. 1998); *see also Miller v. Allenby*, No. 1:15-CV-01207-MJS PC, 2015 WL 5255444, at *3 (E.D. Cal. Sept. 9, 2015) (permitting leave to amend to allege claims challenging forced psychotropic medication). Notably, as the Ninth Circuit has recognized, "[w]hile the therapeutic benefits of antipsychotic drugs are well documented, it is also true that the drugs can have serious, even fatal, side effects . . .." *United States v. Williams*, 356 F.3d 1045, 1055 (9th Cir. 2004) (quoting *Harper*, 494 U.S at 229-30). As a result, an order compelling administration of antipsychotic drugs is "an unusually serious infringement of liberty that calls for . . . thorough consideration and justification." *Id*. at 1056 (discussing compelled administration of antipsychotics in the context of supervised release). Courts have found that the statutory procedure set forth in California's Lanterman-Petris-Short Act ("LPS Act"), California Welfare & Institutions Code §§ 5000, *et seq.*, under which a person qualified under California law as a "mentally disordered offender can be compelled to be treated with antipsychotic medication under certain circumstances, "clearly satisfies the minimum requirements of the Due Process Clause." *Simpson v. State Dep't of Mental Health*, No. 1:11-CV-01559-RRB, 2013 WL 1811817, at *2 (E.D. Cal. Apr. 29, 2013). The LPS Act's procedures, as interpreted by California's courts, are implemented through hearings bearing the name of a seminal case on the subject: *In re Qawi*, 32 Cal. 4th 1, 27-28 (2004). However, mere non-compliance with California's procedures does not make out a constitutional violation cognizable under § 1983. *See Simpson*, 2013 WL 1811817, at *2.

    Here, the question is whether plaintiff has plausibly alleged a separate constitutional violation. The Fourteenth Amendment provides the general standard for evaluating the constitutionally protected interests of individuals who have been involuntarily committed to a state facility. *See Youngberg v. Romeo*, 457 U.S. 307, 312 (1982). Such individuals are "entitled

to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Id*. In determining whether the constitutional rights of an involuntarily committed individual have been violated, the court must balance the individual's liberty interests against the relevant state interests, with deference shown to the judgment exercised by qualified professionals. *Id*. at 320-22. A "decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id*. at 322–23. The professional judgment standard is an objective standard and it equates "to that required in ordinary tort cases for a finding of conscious indifference amounting to gross negligence." *Ammons v. Wash. Dep't of Soc. & Health Servs*., 648 F.3d 1020, 1029 (9th Cir. 2011) (citations and emphasis omitted).

The mere "existence of side-effects is not enough in itself to show that professional judgment was not exercised," given the medical determination (implied by plaintiff's own allegations related to the *Qawi* hearing) that the medication was appropriately administered to treat plaintiff's condition. *See Tilley v. Tracy*, No. C 03-5701 PJH(PR), 2006 WL 822174, at *2 (N.D. Cal. Mar. 28, 2006). But the extent and severity of the side effects plaintiff alleges here at least give rise to the inference that the specific dosages (or combination of dosages) being administered to him may not have been medically appropriate and, relatedly, may not have represented the exercise of professional judgment. That said, plaintiff acknowledges that one of the treating physician defendants did decrease the dosage of one of his medications in response to plaintiff's complaints regarding side effects. (Doc. No. 1 at 4.) Plaintiff was then provided a *Qawi* hearing in the Fresno County Superior Court on September 17, 2019. (*Id*.) After that hearing, his treating physician reinstated the original dosage. (*Id*.) Plaintiff's allegations related to the *Qawi* hearing suggest that the Fresno County Superior Court determined that the medications plaintiff was being given were appropriate given his condition. Obviously, if the dosages and side effects were discussed at the *Qawi* hearing or were otherwise considered and/or
/////

4

addressed by medical professionals responsible for plaintiff's care, that might be relevant or even possibly dispositive of plaintiff's claims.

Because this case is at the screening stage, however, which requires only that the claims asserted be "facially plausible," the court concludes that plaintiff has adequately alleged a violation of the professional judgment standard set forth in *Youngberg*. If it is true, as plaintiff's allegations suggests, that he described to the defendants the serious side effects of the medications being administered to him and they ignored him, a finder of fact could conclude that this amounted to conscious indifference. It is, of course, quite possible that the record and other evidence will ultimately reveal that the complained of side effects were fully considered by the defendants but that professional judgment was exercised to continue to medicate plaintiff in the same manner in light of his condition. However, this determination cannot be made as a matter of law at the screening stage of the litigation. Accordingly, the court will allow plaintiffs to proceed on his claim that the manner by which his forced medication has been carried out violates the professional judgment standard set forth in *Youngberg*, most notably based on plaintiff's allegation that all three defendant medical providers were made aware of and ignored his complaints of the serious side effects of the medication being administered. Defendants will be required to answer to these allegations.

Accordingly, IT IS HEREBY ORDERED that:

1. The findings and recommendations issued on January 24, 2020, (ECF No. 10), are adopted in part;

2. To the extent plaintiff is challenging his designation under the MDO law and/or the fact that he is being forcibly medicated, such claims are dismissed with prejudice because those allegations fail to state a cognizable claim under 42 U.S.C. § 1983;

3. However, plaintiff may proceed on his claim to the extent it is based on his allegation that the manner by which his forced medication has been carried out violates the professional judgment standard set forth in *Youngberg*, including the allegation that all three defendant medical providers were made aware of and

5

ignored plaintiff's complaints of serious side effects resulting therefrom; and

4. This action is referred back to the assigned magistrate judge for further proceedings consistent with this order.

IT IS SO ORDERED.

Dated: **March 2, 2020**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE