1
2
3
4
5
6
7
8
# UNITED STATES DISTRICT COURT

9
## EASTERN DISTRICT OF CALIFORNIA

10

11   REBIO RONNIE TOWNSEND,                     Case No.  1:19-cv-01054-NONE-BAM (PC)

12              Plaintiff,                      ORDER GRANTING DEFENDANTS'
                                                REQUESTS FOR JUDICIAL NOTICE
13        v.                                    (ECF Nos. 23, 26-3)

14   HEMELA, *et al.*,                          FINDINGS AND RECOMMENDATIONS
                                                REGARDING DEFENDANTS' MOTIONS
15              Defendants.                     TO DISMISS
                                                (ECF Nos. 21, 26)
16
17                                              **FOURTEEN (14) DAY DEADLINE**

18   **I.      Introduction**

19          Plaintiff Rebio Ronnie Townsend ("Plaintiff") is a civil detainee proceeding *pro se* and *in*

20   *forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff is being detained

21   pursuant to California's Mentally Disordered Offender ("MDO") law, California Penal Code

22   §§ 2970, *et seq.*  Individuals detained under the MDO law are considered civil detainees and are

23   not prisoners within the meaning of the Prison Litigation Reform Act.  *Page v. Torrey*, 201 F.3d

24   1136, 1140 (9th Cir. 2000).

25          The undersigned screened the complaint on January 24, 2020, and issued findings and

26   recommendations recommending that this action be dismissed for failure to state a cognizable

27   § 1983 claim.  (ECF No. 10.)  Upon review of the findings and recommendations, the District

28   Judge determined that to the extent Plaintiff is challenging his designation under the MDO law

1  and/or the fact that he is being forcibly medicated, he fails to state a cognizable claim under

2  § 1983.  (ECF No. 13.)  However, the District Judge found that a liberal reading of Plaintiff's

3  complaint suggests that he is not only challenging the fact of his forced medication, but also the

4  exact drugs and dosages of those drugs being administered to him, as well as the inattentiveness

5  of Defendants to the serious side effects he is suffering as a result of the forced medications.  (*Id.*)

6  The District Judge therefore adopted the findings and recommendations in part, and this action

7  now proceeds against Defendants Hemela, Kilcrease, and Gill for the claim that the manner by

8  which Plaintiff's forced medication has been carried out is in violation of the Fourteenth

9  Amendment.

10      In response to the complaint, Defendant Gill filed a motion to dismiss on May 26, 2020,

11  and Defendant Kilcrease filed a motion to dismiss on July 2, 2020.[1]  (ECF Nos. 21–24, 26.)

12  Defendant Gill moves to dismiss this action on the ground that Plaintiff has acquired more than

13  three "strikes" under 28 U.S.C. § 1915(g) and cannot plead that he is under imminent danger of

14  serious physical injury.  (ECF Nos. 21–24.)  Defendant Kilcrease moves for dismissal on the

15  same basis, as well as on the grounds that Plaintiff fails to state a claim for relief, Defendant

16  Kilcrease is entitled to qualified immunity, and the complaint should be dismissed under the

17  doctrine of collateral estoppel or res judicata.  (ECF No. 26.)

18      Following Plaintiff's failure to respond to the motions to dismiss, on September 3, 2020,

19  the Court ordered Plaintiff to file an opposition or statement of non-opposition to the pending

20  motions to dismiss.  (ECF No. 30.)

21      Plaintiff filed a response to Defendant Kilcrease's motion on September 17, 2020.  (ECF

22  No. 35.)  Defendant Kilcrease filed a reply on September 22, 2020.  (ECF No. 36.)  Plaintiff filed

23  a response to Defendant Gill's motion to dismiss on September 23, 2020.  (ECF No. 37.)

24  Defendant Gill filed a reply on September 30, 2020.  (ECF No. 39.)

25      Defendants' motions to dismiss are now fully briefed and are deemed submitted.  Local

26  Rule 230(l).  In addition, Defendants' requests for judicial notice, comprised of filings in

27

28  [1] Defendant Hemela filed an answer to the complaint on September 8, 2020.  (ECF No. 31.)

2

1   Plaintiff's prior District Court cases, are both granted.[2]  (ECF Nos. 23; 26-3.)

2   **II.      Allegations in the Complaint**

3          Plaintiff is currently housed at Napa State Hospital in Napa, California.  The events in the

4   complaint are alleged to have occurred at Coalinga State Hospital ("Coalinga") in Coalinga,

5   California.  Plaintiff complains that he is being forced to take psychiatric medication based on an

6   order imposed by the state court and names the following defendants: (1) Dr. Katherine Hemela;

7   (2) Dr. Calvin Kilcrease; and (3) Dr. Simarjit Gill.

8          In Claim I, Plaintiff alleges as follows:

9          Since 2013, I, Petitioner have been ordered by Fresno County Superior Court to
10         take psychiatric psychotropic medication that I don't, in my judgement believe
           that I need and I've been forced against my free will to take a variety of
11         medication that are, at this current and present time of my life causing me to sleep
           so deeply I cannot get out of bed to go to the rest room to relieve my urinary
12         bladder; I cannot wake on time to get to my scheduled groups; I urinate in bed, I
           puke at times and become dizzy; my abdomen is in constant pain and I'm always
13         constipated and cannot deficate when I need to, even certain times when and after
           I take either prune juice, lactulose (liquid laxitive), and D.S.S., or magnisium
14         citrate; the drug Zyprexa takes effect 30 (thirty) minutes after ingestion and I'm
           forced to go to bed much earlier than I intend to, and when I refuse I'm faced with
15         the very good and real chance that I'll be forced to take an injection and made to
           take it by force.  The same things happened in 2005, 2006 and during my
16         incarceration at Napa State Hospital; University of California of Davis and also at
           Atascadero State Hospital.  Please, this must not continue and must cease; there's
17         nothing wrong with my thinking, at all.
18

19  (ECF No. 1, p. 3 (unedited text).)  Plaintiff claims that this happens every night and he is forced

20  to take two 20 milligram tablets and his bladder is working overtime.  He has told Defendant

21  Hemela, but she will not reduce the dosage and will not change the medication.

22         In Claim II, Plaintiff alleges as follows:

23         Doctor Calvin Dean Kilcrease is much the same as Doctor Hemela; she is here on
           Unit 23 and he is on Unit 28 where I was for 7 months; he placed me on the same
24         medications and the same things happened; I would complain to him about it and
           then he dropped it by fifteen (15) milligrams, but my symptoms continued.  Then
25         on 9-17-2019 I had a Qawi hearing and Fresno County Superior Court Judge

26  ─────────────────
    [2] Rule 201(b) of the Federal Rules of Evidence provides that a court may judicially notice a fact
27  that is not subject to reasonable dispute because it: (1) is generally known within the trial court's
    territorial jurisdiction; or (2) can be accurately and readily determined from sources whose
28  accuracy cannot reasonably be questioned.  Fed. R. Civ. 201(b).

> Chittock reinstated the Qawi order and Doctor Kilcrease upped the dosasage of Zypreza (Olanzapine) back up to the original dosage of 40 milligrams; and shortly one week after the hearing I was transfered from Unit #28 back to Unit #23, where I'd been once before; I've been moved from Unit 22 to Unit 23, then to Unit 27, then to Unit 20, then to Unit 26 and then back to Unit 28, and now I'm back on Unit 23, and on all six of these units it's been the same thing, only different doctors and they say I have a severe mental disorder, but there is no actual evidence of any of this. I'm taking this Olanzapine each and every single night; I have seriously severe headaches and this has gone on long enough and has got to stop and I'm getting physically sick; and this medication is effecting my thinking and I'm having difficulty remembering practically anything.
>
> I don't need any type of medication to cure something that is not wrong with my thinking. This has to stop, man.

(*Id.* at 4 (unedited text).) Plaintiff asserts that his appetite has disappeared, and he pukes all the time, which has nothing to do with food or drink. He also asserts that his "nerves are shot" and he is "at the end of [his] rope." (*Id.*) He further claims that no one will listen to him.

In Claim III, Plaintiff alleges as follows:

> Doctor Simarjit Gill had me on Olanzapine for the entire six (6) month term that I'd been on Unit 22, and the same symptoms happened as they're happening now. I'd tell him and others in my treatment team; he did the same thing that Doctor Kilcrease and Doctor Hemela have been doing and are still doing: ignoring me and my pleas and complaints; if they take me off of it they put me on something just as, or much more dangerous.

(*Id.* at 5.) Plaintiff alleges that Defendant Gill will not discontinue the medication; she keeps it going. Plaintiff asserts that his head hurts constantly all the time now. (*Id.*)

## III.    Defendants' Motions to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quotation marks and citations omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (quotation marks omitted); *Conservation Force*, 646 F.3d at 1242; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the well-

4

1    pled factual allegations as true and draw all reasonable inferences in favor of the non-moving

2    party.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Sanders v. Brown*,

3    504 F.3d 903, 910 (9th Cir. 2007); *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 996–97 (9th

4    Cir. 2006); *Morales v. City of L.A.*, 214 F.3d 1151, 1153 (9th Cir. 2000).  Further, prisoners

5    proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and

6    to have any doubt resolved in their favor.  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)

7    (citations omitted).

8         **A.**    **Plaintiff's *In Forma Pauperis* Status**

9         The common ground for dismissal in both Defendants Gill and Kilcrease's motions is

10   essentially a motion to revoke Plaintiff's *in forma pauperis* status on the basis that he has

11   acquired more than three "strikes" under 28 U.S.C. § 1915(g) and cannot plead that he is under

12   imminent danger of serious physical injury.  Plaintiff's oppositions to the motions to dismiss do

13   not address this argument.

14        Both Defendants are aware and acknowledge that Plaintiff was at the time the complaint

15   was filed, and currently remains, a civil detainee.

16        Defendant Gill argues that Plaintiff has acquired at least 12 strikes against him.  (ECF No.

17   21, p. 2.)  Defendant Gill's argument is that Plaintiff misrepresented to the Court the number of

18   prior cases he has filed and which have been dismissed as frivolous or for failure to state a claim,

19   and including those cases, Plaintiff is barred from proceeding *in forma pauperis*.  (ECF No. 22, p.

20   6.)

21        Defendant Kilcrease identifies at least four cases filed by Plaintiff while he was a prisoner

22   in the custody of the California Department of Corrections and Rehabilitation, which were

23   dismissed for failure to state a claim or as frivolous.  (ECF No. 26-1, p. 18.)  Defendant Kilcrease

24   acknowledges that the Ninth Circuit Court of Appeals construes the Prison Litigation Reform

25   Act's definition of a "prisoner" to exclude civil detainees.  (*Id.* at 17; citing *Page v. Torrey*, 201

26   F.3d 1136, 1140 (9th Cir. 1999).)  Nevertheless, Defendant Kilcrease argues that the Court should

27   apply the three strikes bar of 28 U.S.C. § 1915(g) to Plaintiff because he acquired at least three

28   dismissals while he was a prisoner, and because he was once a prisoner convicted of one or more

1  crimes, he should still qualify as a prisoner despite his current status as a civil detainee.  (ECF No.

2  26-1, pp. 18–19.)

3           Despite Defendant Kilcrease's argument otherwise, *Page v. Torrey* controls the outcome

4  here.  The Court was well aware of the number of prior cases filed by Plaintiff and dismissed at

5  the time the motion to proceed *in forma pauperis* was granted.  However, *Page v. Torrey* is clear

6  that "only individuals who, *at the time they seek to file their civil actions*, are detained as a result

7  of being accused of, convicted of, or sentenced for criminal offenses are 'prisoners' within the

8  definition of 42 U.S.C. § 1997e and 28 U.S.C. § 1915."  201 F.3d at 1140 (emphasis added).  It is

9  uncontested that at the time this action was filed, Plaintiff was a civil detainee, not a prisoner.

10  Accordingly, the three strikes bar provided by 28 U.S.C. § 1915(g) does not apply to Plaintiff's

11  filing of this action.  Defendant Gill's motion to dismiss and Defendant Kilcrease's motion to

12  dismiss on this ground are denied.

13       **B.       Fourteenth Amendment and *Youngberg v. Romero***

14            **1.       Legal Standard**

15       The Fourteenth Amendment governs claims of constitutionally inadequate medical care

16  brought by civilly committed plaintiffs.  *Hydrick v. Hunter*, 500 F.3d 978, 996 (9th Cir. 2007),

17  *cert. granted, judgment vacated on other grounds*, 556 U.S. 1256 (2009).  As a civil detainee,

18  Plaintiff's right to medical care is protected by the substantive component of the Due Process

19  Clause of the Fourteenth Amendment.  *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982); *Mitchell*

20  *v. Washington*, 818 F.3d 436 (9th Cir. 2016).  A claim of denial of the right to adequate medical

21  care under the Fourteenth Amendment is analyzed under an objective deliberate indifference

22  standard.  *Gordon v. Cty. of Orange*, 888 F.3d 1118 (9th Cir. 2018).  In order to demonstrate

23  deliberate indifference to a detainee's serious medical needs, a plaintiff must satisfy the following

24  four elements: (1) each individual defendant made an intentional decision related to the

25  conditions of the plaintiff's confinement; (2) those conditions put the plaintiff at risk of suffering

26  serious harm; (3) the defendant failed to take reasonable steps to abate the risk even though a

27  reasonable official in those circumstances would have understood the high degree of risk

28  involved, making the consequences of their actions obvious; and (4) by failing to take those

1   actions, the defendant caused the plaintiff's injury. *Gordon*, 1124–25. To satisfy the third

2   element, the plaintiff must show that the defendant's actions were "objectively unreasonable,"

3   which requires a showing of "more than negligence but less than subjective intent—something

4   akin to reckless disregard." *Id.* The *Gordon* standard represents an objective test against which

5   the Court measures the defendant's behavior.

6   **2.   Discussion**

7   Defendant Kilcrease essentially argues that Plaintiff's claim is truly a challenge to his

8   forced medication because he does not believe he is a mentally disordered offender, rather than to

9   the particular type of medication or form of treatment he is receiving. Defendant Kilcrease

10  further contends that the mere existence of side effects from his medication do not rise to the level

11  needed to support a section 1983 claim for deliberate indifference to a serious medical need.

12  Plaintiff, in his opposition, reiterates the side effects he experienced while taking the

13  prescribed medication, as well as the many times that he asked Defendant Kilcrease to change or

14  reduce the medication. Plaintiff repeats that in spite of his many requests and complaints about

15  side effects, Defendant Kilcrease refused to listen to Plaintiff's pleas and did not agree to change

16  or reduce the dosage of the medication. Rather, Defendant Kilcrease would respond with "I am

17  satisfied that the medication is doing its job—I'm not reducing it and I'm not going to change it."

18  (ECF No. 35, pp. 1–2.) Plaintiff also requests that he be taken off any further psychotropic

19  medication and that he be released from state custody.

20  In reply, Defendant Kilcrease argues that Plaintiff's opposition reveals that the true

21  motivation for this suit is a challenge to Plaintiff's forced medication and confinement, rather

22  than to any particular dosage. In addition, Defendant argues that the fact that Plaintiff continues

23  to receive the same medication, under the care of a different physician at his new institution,

24  reveals that Defendant was doing what he was legally entitled to do in his medical judgment

25  under the circumstances. Finally, Defendant reiterates that the action is really a challenge to the

26  state court's order permitting Plaintiff's continued medication and confinement.

27  While Defendant may be correct that Plaintiff's ultimate aim in filing this action is to

28  challenge the fact of his involuntary medication order and continued confinement, this does not

1   preclude Plaintiff from also raising a claim related to the manner by which his forced medication

2   is carried out.  As discussed above, the District Judge specifically found that Plaintiff's complaint

3   may proceed on his claim to the extent it is based on his allegation that the manner by which his

4   forced medication is carried out violates the professional judgment standard set forth in

5   *Youngberg*, including the allegation that all three defendants were made aware of and ignored

6   Plaintiff's complaints of serious side effects resulting therefrom.  (ECF No. 13, pp. 5–6.)  The

7   District Judge further explained, at length, why the claim should proceed at the screening stage,

8   which requires only that the claims asserted be "facially plausible," even if the record and other

9   evidence might ultimately reveal that the complained of side effects were fully considered by the

10   defendants but that professional judgment was exercised to continue to medicate Plaintiff in the

11   same manner in light of his condition.  (*Id.* at 5.)

12       As Defendants are well aware, the standard on screening is the same as the standard on a

13   motion to dismiss.  Thus, for the reasons discussed in the District Judge's March 3, 2020 order

14   adopting findings and recommendations in part, the undersigned finds that, at the pleading stage,

15   Plaintiff's complaint states a cognizable claim for violation of the professional judgment standard

16   set forth in *Youngberg*.

17       **C.**    **Qualified Immunity**

18       The doctrine of qualified immunity protects government officials from civil liability

19   where "their conduct does not violate clearly established statutory or constitutional rights of

20   which a reasonable person would have known.  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)

21   (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Qualified immunity gives

22   government officials breathing room to make reasonable but mistaken judgments about open

23   legal questions."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).  When considering an assertion

24   of qualified immunity, the court makes a two-pronged inquiry: (1) whether the plaintiff has

25   alleged the deprivation of an actual constitutional right and (2) whether such right was clearly

26   established at the time of defendant's alleged misconduct.  *See Pearson v. Callahan*, 555 U.S.

27   223, 232 (2009) (quoting *Saucier v. Katz*, 535 U.S. 94, 201 (2001)).  A district court is "permitted

28   to exercise their sound discretion in deciding which of the two prongs of the qualified immunity

1    analysis should be addressed first in light of the circumstances in the particular case at hand."

2    *Pearson*, 555 U.S. at 236.

3          "For the second step in the qualified immunity analysis—whether the constitutional right

4    was clearly established at the time of the conduct—the critical question is whether the contours of

5    the right were 'sufficiently clear' that every 'reasonable official would have understood that what

6    he is doing violates that right.' " *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (quoting

7    *al-Kidd*, 563 U.S. at 741) (some internal marks omitted).   "The plaintiff bears the burden to show

8    that the contours of the right were clearly established."  *Clairmont v. Sound Mental Health*, 632

9    F.3d 1091, 1109 (9th Cir. 2011).  "[W]hether the law was clearly established must be undertaken

10   in light of the specific context of the case, not as a broad general proposition."  *Estate of Ford*,

11   301 F.3d at 1050 (citation and internal marks omitted).  In making this determination, courts

12   consider the state of the law at the time of the alleged violation and the information possessed by

13   the official to determine whether a reasonable official in a particular factual situation should have

14   been on notice that his or her conduct was illegal.  *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir.

15   2007); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (the "salient question" to the qualified

16   immunity analysis is whether the state of the law at the time gave "fair warning" to the officials

17   that their conduct was unconstitutional).  "[W]here there is no case directly on point, 'existing

18   precedent must have placed the statutory or constitutional question beyond debate.' "  *C.B. v. City

19   of Sonora*, 769 F.3d 1005, 1026 (9th Cir. 2014) (citing *al-Kidd*, 563 U.S. at 740).  An official's

20   subjective beliefs are irrelevant.  *Inouye*, 504 F.3d at 712.

21         Although a defendant may raise a qualified immunity defense at early stages in the

22   proceeding, courts have recognized that the defense is generally not amenable to dismissal under

23   Rule 12(b)(6), because facts necessary to establish this affirmative defense generally must be

24   shown by matters outside the complaint.  *See Morley v. Walker*, 175 F.3d 756, 761 (9th Cir.

25   1999).  Whether Plaintiff's constitutional rights were violated in this matter, and whether a

26   reasonable official would have known their conduct was violating a clearly established right,

27   hinges on further factual development in this action.  *See Moss v. U.S. Secret Serv.*, 572 F.3d 962,

28   974–75 (9th Cir. 2009) (where extra-record evidence is proffered or required to determine the

1  facts at hand, qualified immunity must be asserted in a summary judgment motion).  Thus, the

2  Court cannot recommend dismissal on the basis of qualified immunity at this stage.

3       **D.**     **Collateral Estoppel or Res Judicata**

4       **1.**     **Legal Standard**

5       Claim preclusion bars litigation of claims that were or could have been raised in a prior

6  action, *Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007) (quotation marks omitted), and

7  it "requires three things: (1) identity of claims; (2) a final judgment on the merits; and (3) the

8  same parties, or privity between parties," *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir.

9  2012) (citing *Cell Therapeutics, Inc. v. Lash Grp., Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2010)).

10       The doctrine of *res judicata*, or claim preclusion, "bars repetitious suits involving the

11  same cause of action once a court of competent jurisdiction has entered a final judgment on the

12  merits." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 315 (2011) (citation and

13  internal quotation marks omitted). Under the Federal Full Faith and Credit Statute, 28 U.S.C.

14  § 1738, a federal court must give a state court judgment the same preclusive effect as the state

15  court judgment would receive by another court of that state.  *See* 28 U.S.C. § 1738; *Maldonado v.*

16  *Harris*, 370 F.3d 945, 951 (9th Cir. 2004) ("28 U.S.C. § 1738 generally requires federal courts to

17  give state court judgments the same res judicata effect that they would be given by another court

18  of that state.").  The Ninth Circuit has made it clear that a section 1983 claim brought in federal

19  court is subject to principles of issue and claim preclusion by a prior state court judgment.  *See*

20  *Gonzales v. Cal. Dep't. of Corr.*, 739 F.3d 1226, 1231 (9th Cir. 2014) (holding that "reasoned

21  denials of California habeas petitions" have claim-preclusive effect on subsequent civil

22  litigation); *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1347 (9th Cir. 1981) ("we hold that

23  because of the nature of a state habeas proceeding, a decision actually rendered should preclude

24  an identical issue from being relitigated in a subsequent § 1983 action if the state habeas court

25  afforded a full and fair opportunity for the issue to be heard and determined under federal

26  standards.").  California's claim preclusion law therefore governs whether Plaintiff's section 1983

27  claim may be brought in federal court.  *Furnace v. Giurbino*, 838 F.3d 1019, 1023 (9th Cir.

28  2016); *see also Anderson v. Mendoza*, No. 2:17-cv-1244-KJM-DB P, 2018 WL 6528429, at *3

1  (E.D. Cal. Dec. 12, 2018), appeal dismissed, No. 19-15428, 2019 WL 4271992 (9th Cir. July 9,

2  2019) ("California claim preclusion law governs whether, in light of his earlier state habeas

3  petition, plaintiff's § 1983 claims may be brought in federal court.").

4      In *Furnace*, the Ninth Circuit held that a petition for writ of habeas corpus filed in

5  California state court can have a claim preclusive effect on a subsequent section 1983 action if the

6  second suit involves: (1) the same cause of action (2) between the same parties or parties in

7  privity with them (3) after a final judgment on the merits in the first suit.  838 F.3d at 1023.

8      California courts employ the primary rights theory to determine what constitutes the same

9  cause of action for claim preclusion purposes, and under this theory, a cause of action is (1) a

10  primary right possessed by the plaintiff, (2) a corresponding primary duty devolving upon the

11  defendant, and (3) a harm done by the defendant which consists in a breach of such primary right

12  and duty.  *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009) (citing *City of Martinez v.*

13  *Texaco Trading & Transp., Inc.*, 353 F.3d 758, 762 (9th Cir. 2003)).  If two actions involve the

14  same injury to the plaintiff and the same wrong by the defendant, then the same primary right is at

15  stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different

16  forms of relief and/or adds new facts supporting recovery.  *Id.* (citing *Eichman v. Fotomat Corp.*,

17  147 Cal. App. 3d 1170, 1174 (1983)).

18      "California's claim preclusion law . . . prevents relitigation 'between the same parti*e*s or

19  parties in privity with them.'"  *Furnace*, 838 F.3d at 1028 (quoting *DKN Holdings LLC v.*

20  *Faerber*, 61 Cal. 4th 813, 824 (2015)).  Privity is a legal conclusion which designates a person

21  "so identified in interest with a party to former litigation that he represents precisely the same

22  right" being adjudicated.  *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997) (quoting *Southwest*

23  *Airlines Co. v. Texas Int'l Airlines, Inc.*, 546 F.2d 84, 94 (5th Cir. 1977)); *Nordhorn v. Ladish*

24  *Co.*, 9 F.3d 1402, 1405 (9th Cir. 1993) ("[W]hen two parties are so closely aligned in interest that

25  one is the virtual representative of the other, a claim by or against one will serve to bar the same

26  claim by or against the other.") (citation omitted).

27      "A judgment is on the merits for purposes of res judicata if the substance of the claim is

28  tried and determined."  *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 77 (2000) (citation and

11

1   internal quotation marks omitted).

2                    **2.      Discussion**

3          Here, Defendant Kilcrease argues that the claims presented in this action, both regarding

4   the fact of Plaintiff's involuntary medication and confinement as well as the manner of his forced

5   medication, have already been raised and addressed by superior court rulings in prior

6   proceedings.  In support of this assertion, Defendant cites to a District Court case, *Townsend v.*

7   *Price*, Case No. 2:20-cv-0333-TLN-EFB (E.D. Cal.), which relied in part on prior state court

8   rulings in finding that Plaintiff should remain detained as a MDO and required to take

9   medication.  (ECF No. 26-1, pp. 26–28.)  Defendant further argues that Plaintiff has admitted in

10  his pleadings that his complaints in this action about his doctors not listening to his requests to go

11  on another medication or receive the medication in a lower dosage due to the unwanted side

12  effects, were presented in his last two superior court 2972/*Qawi* hearings, in September 2018 and

13  September 2019.  Defendant therefore contends that those claims were necessarily decided in

14  those hearings, and rejected by the court, and that Plaintiff is therefore estopped from resurrecting

15  them in this action.

16         Despite the inclusion of more than 150 pages of opinions from Plaintiff's prior District

17  Court cases, (*see* ECF Nos. 23, 26-3, 26-4, 26-5, 26-6), Defendant has not provided any opinion

18  by a state court to support the proposition that the issues presented in this action were decided in a

19  prior action.  While it may be the case that Plaintiff did present arguments regarding the manner

20  of his medication to the state court at a prior *Qawi* hearing, it is conclusory for Defendant to

21  assert that the state court *necessarily* decided that issue when finding that Plaintiff should

22  continue to be subject to forced medication and confinement.  Even in holding that Plaintiff was

23  precluded from raising challenges to his incarceration, MDO designation, civil commitment, and

24  placement on psychiatric medication, the District Court in *Townsend v. Price* made no finding as

25  to a challenge regarding the specific manner in which the involuntary medication was prescribed.

26  (*See* ECF No. 26-5; Case No. 2:20-cv-0333-TLN-EFB.)

27         Thus, Defendant Kilcrease has failed to demonstrate that Plaintiff has raised the same

28  cause of action in a prior proceeding, much less that the prior proceeding was between the same

                                          12

1   parties or reached a final decision on the merits of the specific claim proceeding in this action.

2   **IV.     Order and Findings and Recommendations**

3          Based on the foregoing, Defendants' requests for judicial notice, (ECF Nos. 23, 26-3), are

4   HEREBY GRANTED.

5          Furthermore, it is HEREBY RECOMMENDED as follows:

6      1.   Defendant Gill's motion to dismiss, (ECF No. 21), be DENIED; and

7      2.   Defendant Kilcrease's motion to dismiss, (ECF No. 26), be DENIED.

8          These Findings and Recommendations will be submitted to the United States District

9   Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

10  fourteen (14) days after being served with these Findings and Recommendations, the parties may

11  file written objections with the Court.  The document should be captioned "Objections to

12  Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file

13  objections within the specified time may result in the waiver of the "right to challenge the

14  magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014)

15  (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

16

17  IT IS SO ORDERED.

18    Dated:   __August 24, 2021__              ___/s/ Barbara A. McAuliffe___

19                                              UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28

                                              13